LAND, J.
 

 On May 9, 1923, the defendant, Henry R. Aleman, acquired Sweet Home plantation from Armour Fertilizer Works. A mortgage note for $35,000, and three mortgage notes for $6,114.18 each represented the credit portion of the purchase price.
 

 The $35,000 mortgage note was indorsed by Charles H. Russell, third opponent.
 

 Shortly after Aleman acquired this plantation, he sought to obtain a loan of $35,000 through plaintiff, Investors’ Mortgage Company, represented by its agent, George H. De Russy, in order to retire the note for that amount indorsed by Russell, but failed to do so on account of defects in title. Later on Russell, as indorser of the $35,000 mortgage note, reopened negotiations for a loan through plaintiff, and finally plaintiff agreed to make the loan through the Prudential Life Insurance Company of America, stipulating that plaintiff should be paid a commission of $3,500.
 

 The mortgage notes on the Sweet Home plantation securing plaintiff’s commission were not paid, and, when plaintiff had ex-ecutory process issued in this case, October 11, 1926, Charles H. Russell intervened, and, by third opposition, set up a note secured by mortgage on that plantation recorded on April 10, 1923; plaintiff’s mortgage having been recorded on July 23, 1925.
 

 In other words, Russell, as third opponent, claims that his note is secured by mortgage on Sweet Home plantation senior in rank to plaintiff’s mortgage, and that he is entitled to be paid out of the proceeds of the sale of the property by preference.
 

 The mortgage upon which the third opponent relies is a conventional mortgage granted by Henry R. Aleman in favor of Armour Fertilizer Works for the sum of $4,-139.65, represented by a promissory note dated Belle Alliance, La., May 1, 1920, signed by Aleman Planting & Manufacturing Company, Ltd., per II. R. Aleman, Pres., due on or before December 15, 1920, payable to the order of Planters’ Fertilizer
 
 &
 
 Chemical Company, New Orleans, La., owned and operated by Armour Fertilizer Works, indorsed by the Planters’ Fertilizer & Chemical Company, without recourse, credited with $1,000, and extended for one’year from January 17, 1923.
 

 In answer to the petition and third opposition of Charles H. Russell, plaintiff asserts that the loan of $35,000 was made to
 
 *287
 
 Henry R. Aleman, and its commission of $3,500 was agreed to, upon the conditions that all mortgage notes against Sweet Home plantation would be first surrendered to George H. De Russy, agent of plaintiff, for cancellation, so that the loan would be secured by a first mortgage, and plaintiff’s commission by a second mortgage on the property.
 

 Plaintiff further asserts, in its answer to the intervention and third opposition of Charles II. Russell, that these conditions formed the very basis of the contract of loan, and were well known and agreed to by Russell and other interested parties; that Russell was not only acting as the agent for Henry R. Aleman, but was, in reality, a principal, because of his interest as indorser on the past-due mortgage note for $35,000 on the Sweet Home plantation; and that, under these circumstances, Russell is estopped from recovery on the mortgage note upon which he sues as intervener and third opponent.
 

 The case went to trial upon these issues, and resulted in a judgment against plaintiff, and in favor of intervener and third opponent, ordering the sheriff to turn over to Charles H. Russell the sum of $5,860.03, held by the sheriff under the order of the court rendered on the intervention and third opposition in the executory proceedings, and condemning plaintiff to pay all costs.
 

 From this judgment plaintiff prosecuted a suspensive appeal to this court, which was dismissed on technical grounds, and the case is now before us on a devolutive appeal taken thereafter by plaintiff.
 

 The loan was executed on July 23, 1925. On that date, George H. De Russy, agent of plaintiff, obtained from the clerk of court of Assumption parish a mortgage certificate showing the mortgages of Armour Fertilizer Works on Sweet Home plantation, securing the note for $35,000, and the three notes for $6,114.18 each, which that company held; but the certificate failed to show the mortgage securing the note sued on by Charles H. Russell, third ■ opponent.
 

 In addition to the mortgage note of $35,-000, and the three other mortgage notes of $6,114.18 each, Armour Fertilizer Works held certain notes of the Aleman Planting & Manufacturing Company, aggregating $7,000. One of these notes was secured by a mortgage on Sweet Home plantation, and is the same note which Charles H. Russell seeks to collect in his intervention and third opposition.
 

 Armour Fertilizer Works wanted these notes aggregating $7,000 paid, before they would accept $35,000 from the loan in payment of their $35,000 mortgage note, indorsed by Charles H. Russell, and surrender for cancellation their three other mortgage notes for $6,114.18 each.
 

 Charles H. Russell, third opponent, without the knowledge of plaintiff or its agent, George H. De Russy, paid Armour Fertilizer Works the $7,000, upon the condition that it would turn over to him the notes, which he admits he knew were securities; but he claims that he did not know, at the time, that one of them, the note he has sued upon, was secured by mortgage upon the Sweet Home plantation.
 

 If Charles H. Russell, third opponent, warranted to. plaintiff that the Sweet Home plantation should be free of all prior mortgages
 
 *289
 
 at the time the loan was executed, it is immaterial whether he acquired these securities before or after the loan was consummated on July 23, 1925. The fact that he may not have discovered that one of these securities was a mortgage note on the Sweet Home plantation until the executory proceedings were brought in this case, as he has testified, is no excuse whatever for the breach of his warranty, as it was his plain duty to have surrendered the note sue# upon by him for cancellation at all events.
 

 If Charles H. Russell, third opponent, made to plaintiff such warranty, plaintiff had a perfect legal right to rely upon warranty so made, notwithstanding the mortgage certificate’s failure to show the senior mortgage which Russell asserts in this case.
 

 The sole issue, then, in the ease is reduced to the single proposition: Did Russell warrant that the Sweet Home plantation should be free of all prior incumbrances at the date the loan was effected?
 

 We are constrained to answer this question in the affirmative.
 

 George H. De Russy, agent for- plaintiff, testified as follows: “Q. Did you ever have occasion to discuss this loan with Mr. Russell, if so under what conditions?
 

 “A. Well, Mr. Aleman told me if necessary to discuss it with Mr. Russell, as he was relying on Mr. Russell for financial support and Mr. Russell was going to assist him in buying Sweet Home Plantation.
 

 “Q. Subsequently to Mr. Aleman having given you that information and requested you to take the matter up with Mr. Russell, (with) whom, then did you continue the negotiations leading up to the formation of this lqan?
 

 “A. Mr. Russell.”
 

 This witness further testified: “Q. Did Mr. Russell know that on the faith of the fact that the Prudential Insurance Company would have a first mortgage on the plantation, the loan of Thirty-five Thousand Dollars ($35,000.00) was made?
 

 “Yes, sir.
 

 “And on the faith of the fact that the Investors’ Mortgage Co. was to have a second mortgage, the loan of the Thirty-five Thousand Dollars ($35,000.00) was consummated with the Prudential Insurance Company, and your commissions were secured by a second mortgage as you understood?
 

 “A. Yes.
 

 “Q. And that was the understanding between you and Mr. Russell at the time the loan was made?
 

 “A. Yes.”
 

 .Again this witness reiterates these statements by testifying: “Q. Mr. De Russy, I understand from the testimony that when this loan of $35,000.00 and the loan of $3,-500.00 were made, that it was distinctly understood between Mr. Russell and yourself that the Prudential was to have the first mortgage and the Investors (plaintiff) the second?
 

 “A. There is no doubt of that.
 

 “Q. And on the faith of that understanding you lent the money?
 

 “A. Yes.”
 

 On page 103 of the transcript this witness also testified: “Q. "Mr. De Russy, when
 
 *291
 
 you got the notes for cancellation you relied absolutely on the mortgage certificate you had in your possession to show the mortgages?
 

 “A. On that and Mr. Russell’s promise to give all the notes that were against the property. I took it for granted that he knew more about that than I did.
 

 “Q, Did Mr. Russell promise that in person?
 

 “A. It was the basis of the entire contract. All negotiations were based on surrendering or cancelling every mortgage that would have primed ours.
 

 “Q. Was that an oral contract between you •and Mr. Russell?
 

 ‘A. Oral and confirmed in the correspondence.”
 

 Charles H. Russell testified that: “The loan was made to take up this $35,000 note. 'I did not know it was a first mortgage. I did not know how Aleman and. De Russy had arranged it. Did know of the $3,500.00 mortgage (meaning plaintiff’s commission).
 

 “Q. You did know that it would be a second mortgage?
 

 “A. Yes. I understood that there was to be a second mortgage to the $35,000 mortgage, what the lawyers term second or third mortgages, I don’t know.”
 

 This answer of Charles H. Russell is a clear admission that he knew that the loan was to be 'secured by a first mortgage, and plaintiff’s commission by a second
 
 mortgage
 
 on Sweet Home plantation, as most positively and repeatedly testified to by De Russy.
 

 In letter of date March 4, 1925, to George H. De Russy from “Russell Sugar Company, Inc., Russell,” it is stated: “The second mortgage for the $3,500.00 will be alright with 8% interest, and we would also like the privilege of paying mortgage before maturity.”
 

 In a letter from De Russy, agent of plaintiff, to Russell Sugar Company, of date July 28, 1925, it is said: “We cancelled all mortgages outranking ours today and have everything in shape except the insurance policies.”
 

 In letter of date March 19, 1925, to George H. De Russy from “Russell Sugar Company, Inc., Russell,” it is stated: “In re abstract Sweet Home Plantation, Mr. Aleman had an abstract made of this property at time of seizure and sale. Mr. Chaffe who represents .Armour
 
 &
 
 Co. has the abstract, and we have requested our Attorney, Mr. Burt W. Henry, of Henry & Cooper, to secure same or a copy which we will send to you just as soon as we can get it or turn same over to your attorney.
 

 “Mr. Henry asked us who your attorneys were, and if there is no objection, we would appreciate your advising us so we may tell him. By working all together, we can get quicker results. We would like to speed the matter up as much as possible, as there is a note due on the property April 10, 1925, which we have guaranteed payment of to Armour & Co.”
 

 The above letter is important, as it shows that Mr. Henry was the attorney of Charles H. Russell, although he testified that Mr. Henry represented Henry R. Aleman alone in this matter.
 

 
 *293
 
 This letter is also important as it shows that Charles H. Russell was acting as principal on his own account and wished matters speeded up, “as there is a note due on the property April 10, 1925, which we have guaranteed payment of to Armour & Co.” ■ — referring to the $35,000 mortgage note for credit part of purchase price, indorsed hy Charles H. Russell.
 

 George H. De Russy, agent for plaintiff, testified that, after all the terms and conditions of the loan were agreed to by all parties, he attended, at the request of Charles H. Russell, a meeting at the office of Mr. Burt Henry in New Orleans, attorney for Russell and Aleman, where he mot Mr. Chaffe, attorney for Armour Fertilizer Works; that the purpose of this meeting was to deliver to De Russy all mortgage notes bearing on Sweet Home plantation for cancellation ; and that, at this meeting, in exchange for De Russy’s cheek for $35,000, Mr. Chaffe delivered to him the $35,000 past-due mortgage note, indorsed by Charles H. Russell; and three other mortgage notes for $6,114.-18, each bearing on the Sweet Home plantation.
 

 The effect made on the mind of De Russy hy this meeting is stated by him as follows: “When I paid the Thirty-five Thousand Dollars ($35,000) to Mr. Henry in New Orleans, who in turn turned it over to Mr. Dafoe, which was by agreement between Mr. Russell and Mr. Dafoe (agent of Armour Fertilizer Works), I believed that I had all of the mortgages that were recorded against Sweet Home Plantation, and that their cancellation gave my constituents a first and second mortgage.”
 

 We are convinced that the evidence shows.' that Russell knew that no loan would be made unless existing mortgages should be first canceled, and that he promised De Russy, agent of plaintiff, to have all mortgage notes surrendered for cancellation.
 

 Russell cannot be permitted to breach his warranty to the prejudice of plaintiff, who has acted upon the faith of same, and third opponent is clearly estopped from recovery on the mortgage note sued upon by him in this case.
 

 It is therefore ordered that the judgment' appealed from be annulled and reversed.
 

 It is now ordered that the intervention’ and third opposition of Charles H. Russell be dismissed at his costs.
 

 It is further ordered that the sheriff of Assumption parish turn over to plaintiff, Investors’ Mortgage Company, Inc., the sum of $5,860.03 in his hands to apply to the payment of three second mortgage notes, to wit, $3,543, sued on by plaintiff, and 8 per cent, per annum interest thereon from July 22, 1925, until paid, and 10 per cent, additional on the aggregate of principal and interest as attorney’s fees, and all costs of these proceedings.